## BEFORE THE UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: POWERSCHOOL HOLDINGS, INC., AND POWERSCHOOL GROUP, LLC CUSTOMER DATA SECURITY BREACH LITIGATION | MDL No. 3149 |

## INTERESTED PARTIES KAYELEEN CAMPBELL'S AND NICKOLAUS CAMPBELL'S RESPONSE TO THE MOTION TO TRANSFER AND CONSOLIDATE

### I.   INTRODUCTION

Kayeleen Campbell[1] and Nickolaus Campbell[2] ("Respondents") submit this response, pursuant to 28 U.S.C. § 1407 ("Section 1407") and Rule 6.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation ("Panel Rule 6.2(e)"), to the Motion to Transfer and Consolidate for Consolidated Pretrial Proceedings Under  28 U.S.C. § 1407 ("Motion") filed by Plaintiffs J.I., A.J., and O.S. by and through her Next Friend M.S., ("Movants"). MDL No. 3149, Dkt. No. 1-1.

Respondents agree with Movants and other respondents that this action should be consolidated, pursuant to Section 1407. Common questions of fact and law abound, and consolidation will promote the just and efficient conduct of these actions and serve the goals of judicial economy. Respondents further agree that transfer is appropriate because transfer will further the convenience of the parties and witnesses.

---

[1] Plaintiff Kayeleen Campbell timely filed, on February 13, 2025, the following action in the Northern District of Illinois: *Kayeleen Campbell v. PowerSchool Holdings, Inc. and PowerSchool Group LLC*, 1:25-cv-01549. Plaintiff K. Campbell's Complaint was randomly assigned to the Honorable Elaine E. Bucklo, and has since been reassigned to the Honorable Jorge L. Alonso.
[2] Plaintiff Nickolaus Campbell timely filed, on January 23, 2025, the following action in the Eastern District of California: *Nickolaus Campbell v. PowerSchool Holdings, Inc. and PowerSchool Group LLC*, 2:25-cv-00310. Plaintiff N. Campbell's Complaint is before the Honorable Daniel J. Calabretta.

However, this action would be better served in the first instance by transfer to the Eastern District of California, where the overwhelming majority of complaints have been filed, where Respondent N. Campbell filed his complaint, and where Defendant PowerSchool is headquartered. But if the Panel determines that the docket conditions in the Eastern District of California make transfer difficult or inappropriate, in the alternative, Respondents request this action be transferred instead to the Northern District of Illinois where Respondent K. Campbell filed her complaint, given its centrality and ease of transportation for a nationwide case. Finally, if neither of those jurisdictions are considered, Respondents also support transfer to the Western District of Missouri.

The Eastern District of California is the most appropriate transferee forum because Defendants are headquartered there (in addition to relevant documents and employees being found there), it is an easily accessible travel hub, and there are no MDLs presently pending there, which demonstrates the Eastern District of California's ability to efficiently advance and resolve a complex case such as this. Alternatively, the Northern District of Illinois would also be an appropriate transferee forum given that it is centrally located between the coasts and is also a more easily accessible travel hub for a case with nationwide implications than the Western District of Missouri. Nevertheless, the Western District of Missouri is also appropriate as a third alternative forum given its prior handling of complex data breach MDLs.

Accordingly, Respondents respectfully move this Panel for an Order, pursuant to Section 1407 and Panel Rule 6.2(e), for consolidated pre-trial proceedings in the United States District Court for the Eastern District of California with the Honorable Daniel J. Calabretta. In the alternative, Respondents suggest consolidation in and transfer to the United States District Court for the Northern District of Illinois with the Honorable Jorge L. Alonso.

## II.    <u>BACKGROUND</u>

Defendants PowerSchool Holdings, Inc. and PowerSchool Group LLC (collectively, "Defendants" or "PowerSchool") are a national education technology firm that provides cloud-based education software for K-12 students and educators across the country. Defendants are headquartered in Sacramento California, within the Eastern District of California.

The underlying litigation is currently comprised of dozens of federal putative class action lawsuits filed against Defendants nationwide (the "Related Actions"). Each of these actions asserts similar claims arising from Defendants' failures to properly secure the highly-sensitive personally identifiable information ("PII") and private health information ("PHI") stored on their networks and systems and prevent a cyberattack that resulted in the theft and exfiltration of the PII and PHI of at least 60 million students (including minors), parents, teachers, and school staff throughout the United States (the "Data Breach").

The Data Breach was the result of numerous failures by Defendants to implement basic cybersecurity features, which enabled an unauthorized third-party to breach PowerSchool's customer support portal, PowerSource, via the use of compromised credentials. As a result of Defendants' cybersecurity failures, threat actors gained unauthorized access to the personal data of at least 60 million individuals and minors in the nation's public and private elementary school, middle school, and high school education systems, including sensitive information such as the individuals' PHI, full names, Social Security numbers, grades, and email addresses.

Of the at least forty-three Related Cases, two were filed in the Western District of Missouri with two different judges (including Movants' Complaint), one has been filed in the Northern District of Illinois (Respondent K. Campbell's Complaint), one has been filed in the Eastern District of New York, and at least two have been filed in the Northern District of California. The

remaining actions (including Respondent N. Campbell's action and at least thirty-six other actions) were filed in the Eastern District of California.

### III.    LEGAL STANDARD

Pursuant to Section 1407, transfer and consolidation is appropriate where the transfer will serve the convenience of the parties and witnesses and will promote the just and efficient conduct of the transferred cases. 28 U.S.C. § 1407. The Panel considers four factors to determine whether transfer and consolidation in any particular district is appropriate: (1) the elimination of duplication in discovery; (2) the avoidance of conflicting rules and schedules; (3) the reduction of litigation cost; and (4) the conservation of the time and effort of the parties, attorneys, witnesses, and courts. *See* Manual for Complex Litigation (Fourth) § 31.131 (2004) (citing *In re Plumbing Fixture Cases*, 298 F. Supp. 484 (J.P.M.L. 1968)). Here, all four factors weigh in favor of transfer and consolidation in the Eastern District of California or, in the alternative, the Northern District of Illinois.

The Panel regularly orders transfer and consolidation of similar data breach litigation. *See, e.g.*, *In re AT&T Inc. Cellular Customer Data Sec. Breach Litigation*, MDL No. 3124, 2024 WL 4429233, at *1 (J.P.M.L. Oct. 4, 2024) (transferring and consolidating 45 related data breach class actions, initially filed in eight different districts, with an additional 34 tag along actions); *In re: Fortra File Transfer Software Data Security Breach Litigation*, MDL No. 3090, 2024 WL 436478, at *1 (J.P.M.L. Feb. 5, 2024) (transferring and consolidating 46 related data breach class actions initially filed in seven districts); *In re: Perry Johnson & Associates Medical Transcription Data Security Breach Litigation*, MDL No. 3096, 2024 WL 436485, at *1 (J.P.M.L. Jan. 30, 2024) (transferring and consolidating 40 related data breach class actions initially filed in nine districts); *In re MOVEit Customer Data Security Breach Litigation*, MDL No. 3083, 2023 WL 6456749, at

*2 (J.P.M.L. Oct. 4, 2023) (transferring and consolidating 101 related data breach actions initially

filed in 22 districts); *In re T-Mobile 2022 Customer Data Security Breach Litigation*, MDL No.

3073, 2023 WL 3829244, at *2 (J.P.M.L June 2, 2023) (transferring and consolidating 11 related

data breach class actions initially filed in eight districts with an additional 5 related actions); *In re:*

*American Medical Collection Agency, Inc. Customer Data Security Breach Litigation*, MDL No.

2904, 410 F. Supp. 3d 1350 (J.P.M.L. July 31, 2019) (transferring and consolidating 42 related

data breach class actions initially filed in four districts); *and In re Marriott International, Inc.*

*Customer Data Security Breach Litigation*, MDL No. 2879, 363 F.Supp.3d 1372, 1374 (J.P.M.L.

Feb. 6, 2019) (transferring and consolidating 11 related data breach class actions initially filed in

five districts with an additional 70 potentially-related actions filed in 11 different districts).

## IV.  <u>ARGUMENT</u>

**A.  This Litigation Satisfies Section 1407's Requirements for Consolidation and Transfer**

Pursuant to Section 1407, pretrial transfer and consolidation is appropriate and necessary

where, as here, all of the various cases filed against Defendants involve the same factual allegations

and the same applicable legal standards to evaluate the underlying claims. Each of the Related

Actions here allege similar violations of state and federal statutory and common law arising from

the same underlying Data Breach. Each of the Related Actions seek certification of a similar class

of persons. These are precisely the circumstances Section 1407 is intended to address because

consolidation and transfer here will help to avoid excessive costs due to duplicative discovery and

will also reduce the risk of inconsistent rulings on a variety of issues.

Respondents agree with Movants and other respondents that consolidation and transfer of

the Related Cases to a single district is appropriate here, because: (1) the cases involve common

questions of fact and law; (2) transfer and consolidation would be convenient to the parties and

prevent duplicative discovery; and (3) transfer and consolidation would promote the just and efficient conduct of the Related Actions. As the Panel regularly recognizes, transfer and consolidation is appropriate when it serves "the convenience of parties and witnesses" and when it "promote[s] the just and efficient conduct" of the actions." 28 U.S.C. § 1407(a). Respondents recognize and agree with this too and submits that transfer and consolidation of the Related Actions here is appropriate and necessary, pursuant to Section 1407.

### 1.   This Litigation Involves Common Questions of Law and Fact

Common questions of fact exist, and may be presumed, where two or more complaints assert comparable allegations against similar defendants based on similar transactions and events *See In Re: Toyota Motor Corp. Unintended Acceleration Marketing, Sales, Practices, and Products Liab. Litig*., 704 F. Supp. 2d 1379, 1381 (J.P.M.L. 2010). Here, each of the Related Actions pleads similar facts and raises similar theories of liability under statutory and common law. Each complaint alleges that Defendants failed to properly secure the PII and PHI stored within its networks and systems, resulting in unauthorized third-party access and dissemination of plaintiffs' and putative class members' PII and PHI. In addition, all plaintiffs seek certification of a nationwide class, and all plaintiffs define the nationwide class using similar terms, language, and characteristics.

### 2.   Absent Consolidation, Duplicative Discovery is Likely

In view of the common questions of fact and law that exist here, the parties face the specter of duplicative discovery if the Related Actions are not consolidated and transferred. This is significant insofar as the Panel seeks to "ensure that the actions are supervised by a single judge who, from day-to-day contact with all aspects of the litigation, will be in the best position to design a pretrial program that will prevent duplicative discovery . . . and substantially conserve the time

and efforts of the parties, the witnesses and the federal judiciary." *In Re Resource Exploration Inc. Sec. Litig.*, 483 F. Supp. 817, 821 (J.P.M.L. 1980).

Absent consolidation and transfer, duplicative discovery is assured here given that all plaintiffs will likely seek the same documents from Defendants, request to depose the same witnesses, and issue similar interrogatories and requests for admission. The Panel can also expect that, in each Related Action, Defendants will raise the same class certification and discovery objections, seek the same protective orders, and assert the same privileges and defenses. Transfer and consolidation will therefore permit and encourage the parties to freely coordinate their discovery efforts, thereby more efficiently moving the Related Actions forward towards resolution.

### 3.    Transfer and Consolidation Will Prevent Inconsistent Pretrial Rulings

The possibility of inconsistent rulings on pretrial issues is a significant consideration for the Panel because of the possible *res judicata* or collateral estoppel effects on other cases. *See In re Enron Securities Derivative & ERISA Litig.*, 196 F. Supp. 2d 1375, 1376 (J.P.M.L. 2002) (ordering transfer and consolidation in part to prevent inconsistent pretrial rulings, particularly with respect to questions of class certification). Given the similar allegations and legal theories raised in the Related Actions, the possibility of inconsistent rulings on pretrial motions is heightened here.

### B.  The Eastern District of California is the Most Appropriate Transferee Forum

In selecting the transferee court, the Panel routinely considers several factors, including "*where the largest number of cases is pending*, where discovery has occurred, where cases have progressed furthest, *the site of the occurrence of the common facts*, *where the cost and inconvenience will be minimized*, *and the experience, skill, and caseloads of available judges*." Manual for Complex Litigation (Fourth) § 20.131 (2004) (emphasis added). Each of these factors

supports consolidation and transfer to the Eastern District of California.

First, of the Related Actions pending in four districts, the vast majority (at least 37) are currently pending in the Eastern District of California. None of these Related Actions have progressed past the initial filing of a complaint. Thus, the location where cases have progressed furthest is a neutral factor in the instant case, but the location of the largest number of cases weighs strongly in favor of the Eastern District of California.

Second, Defendants' corporate headquarters are in Sacramento, California. Many of the crucial witnesses and documents will therefore be located in the Eastern District of California, and "the site of the occurrence of the common facts" is also in the Eastern District of California. Commonly, the Panel transfers and consolidates related actions in the home district of the defendant, particularly in the context of data breach litigation. *See, e.g.*, *In re Marriott*, 363 F. Supp. 3d at 1374–75 ("We select the District of Maryland as the transferee district for this litigation. Marriott is headquartered in that district, and relevant documents and witnesses thus likely will be found there."); *In re: Equifax, Inc., Customer Data Sec. Breach Litigation*, 289 F. Supp. 3d 1322, 1326 (J.P.M.L. 2017) ("We select the Northern District of Georgia as the transferee district for this litigation. Equifax is headquartered in that district, and relevant documents and witnesses thus likely will be found there."); *In re Yahoo! Inc. Customer Data Sec. Breach Litigation*, 223 F. Supp. 3d 1353, 1354–55 (J.P.M.L 2016) ("We conclude that the Northern District of California is an appropriate transferee district for this litigation. Defendant Yahoo's corporate headquarters is located within the district, and therefore relevant documents and witnesses are likely to be located there."); *In re 21st Century Oncology Customer Data Sec. Breach Litigation*, 214 F. Supp. 3d 1357, 1358 (J.P.M.L. 2016) ("The Middle District of Florida is an appropriate transferee forum for this litigation. 21st Century is headquartered in this district, and

the witnesses and documents relevant to the facts of this litigation are located there.").

Third, the Honorable Daniel J. Calabretta is an extremely qualified jurist who is more than capable of handling the complexity of an MDL, and the Eastern District of California regularly demonstrates that it is capable of handling MDLs of this magnitude. Prior to becoming a judge, Judge Calabretta clerked for Justice Stevens in the United States Supreme Court and the Ninth Circuit Court of Appeals, worked at a large law firm for several years, and was a Deputy Attorney General for the California Department of Justice. He has over twenty years of experience in complex civil and criminal litigation, as well as state policymaking (stemming from his years of experience as former Deputy Legal Affairs Secretary). Accordingly, Judge Calabretta is a qualified jurist that is more than capable of handling this litigation in an efficient and effective manner. Presently, there are no MDLs pending before Judge Calabretta or any of the Eastern District of California's other judges; and, therefore, Judge Calabretta would have the time and resources to dedicate to an MDL of this magnitude. Furthermore, according to the most recent September 2024 reporting period, the Eastern District of California averages 9.2 months from the time of filing of a civil case to disposition, as compared to the national average of 13.7 months.[3]

Fourth, as the Panel observed in *In re Enron Corp. Sec. Derivative & "ERISA" Litigation*, "a litigation of this scope will benefit from centralization in a major metropolitan center that is well served by major airlines, provides ample hotel and office accommodations, and offers a well-developed support system for legal services." 196 F. Supp. 2d 1375, 1376–77 (J.P.M.L. 2002). Sacramento, California is the state's capital and offers an easily accessible forum for litigation, as it is served by the Sacramento International Airport, which is approximately fifteen minutes from

---

[3] *See* United States District Courts – National Judicial Caseload Profile (Sept. 2024), https://www.uscourts.gov/sites/default/files/2024-12/fcms_na_distprofile0930.2024.pdf (last accessed Feb. 19, 2025).

the proposed transferee courthouse. Indeed, the Eastern District of California's Sacramento International Airport offers non-stop flights from each jurisdiction where Related Actions are pending. Given the nationwide impact of the instant Data Breach, the Panel can expect that plaintiffs, putative class members, counsel, experts, and witnesses are likely to be located across the country. Thus, the close proximity of the Sacramento International Airport to the proposed transferee courthouse will serve to minimize cost and inconvenience to all parties. *See In re Power Morcellator Prod. Liab. Litigation*, 140 F. Supp. 3d 1351, 1354 (J.P.M.L. 2015) (transferring and consolidating cases in a district "easily accessible for all parties").

## C.  In the Alternative, the Northern District of Illinois is the Most Appropriate Transferee Forum

In the alternative, consolidation and transfer to the Northern District of Illinois is appropriate for two primary reasons.

First, the Honorable Jorge L. Alonso is also an extremely qualified jurist who is more than capable of handling the complexity of an MDL, and the Northern District of Illinois (with 22 judges) is amply capable of handling MDLs of this magnitude. Prior to becoming a federal district court judge, Judge Alonso worked as an Assistant Public Defender in the Office of the Cook County Public Defender and served as an Associate Judge in the Illinois Cook County Judicial Circuit Court. Judge Alonso has over a decade of experience as a judge presiding over complex civil and criminal litigation, including data breach class actions. As such, Judge Alonso is a qualified jurist capable of handling this litigation in an efficient and effective manner. Although, there are a handful of MDLs already pending in the Northern District of Illinois, Judge Alonso is not presiding over any of them; and, therefore, Judge Alonso would have the time and resources to dedicate to an MDL of this magnitude. Furthermore, according to the most recent September 2024 reporting period, the Northern District of Illinois averages 6.8 months from the time of filing

of a civil case to disposition, as compared to the national average of 13.7 months.[4]

Second, when parties are geographically dispersed, as they are here, the Panel seeks to find a compromise venue somewhere in the geographical center of the various actions or parties. Here, the Northern District of Illinois is located in the heart of downtown Chicago, the third largest metropolitan area in the nation. Not only is Chicago centrally located between the nation's two coasts, but it is also conveniently served by two international airports: O'Hare International Airport, less than 20 miles from the alternative proposed transferee courthouse, and Midway International Airport, which is approximately 25 minutes from the alternative proposed transferee courthouse. The convenience of flights in and out of these two hubs of international travel will serve to minimize costs and inconvenience to all parties. Thus, Chicago offers an easily accessible forum for litigation.

## D. In the Alternative, the Western District of Missouri is an Appropriate Transferee Forum

Finally, for the reasons outlined in Movant's papers, Respondents also agree that the Western District of Missouri is an appropriate third alternative for consideration if the Panel believes that transfer to the Eastern District of California or the Northern District of Illinois is ill-advised.

## <u>CONCLUSION</u>

For the reasons set forth herein, the undersigned respectfully request that this Panel consolidate and transfer the related actions, as well as any and all subsequently filed related actions, to the United States District Court for the Eastern District of California or, in the

---

[4] *See* United States District Courts – National Judicial Caseload Profile (Sept. 2024), https://www.uscourts.gov/sites/default/files/2024-12/fcms_na_distprofile0930.2024.pdf (last accessed Feb. 19, 2025).

alternative, to the Northern District of Illinois, for coordinated and consolidated pretrial proceedings. If neither of those jurisdictions are appropriate, Respondents also support transfer to the Western District of Missouri.

Dated: February 20, 2025

Respectfully submitted,

*/s/ Nicholas U. Murphy*
Nicholas U. Murphy
James J. Pizzirusso
Amanda V. Boltax
**HAUSFELD LLP**
888 16th Street, N.W., Suite 300
Washington, D.C. 20006
Tel.: (202) 540-7200
Fax: (202) 540-7201
Email: nmurphy@hausfeld.com
Email: jpizzirusso@hausfeld.com
Email: mboltax@hausfeld.com

Steven M. Nathan
**HAUSFELD LLP**
33 Whitehall Street, Fourteenth Floor
New York, NY 10004
Tel.: (646) 357-1100
Fax: (212) 202-4322
Email: snathan@hausfeld.com

*Counsel for Respondents Kayeleen*
*Campbell and Nickolaus Campbell*